IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CAROL DIXON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No.   2:16-cv-1634-TMP |
| | ) | |
| BIRMINGHAM, CITY OF, and | ) | |
| JOHN COLON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the motion for a more definite statement (doc. 7) and the motion to dismiss or, in the alternative, for summary judgment (doc. 11) filed by the defendants, the City of Birmingham ("the City") and John Colon. Also pending is the motion to stay summary judgment pending the completion of discovery (doc. 18), filed by plaintiff Carol Dixon. The motions have been fully briefed and the parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## BACKGROUND

This action arises from plaintiff's eight-year employment with the City. Plaintiff alleges that she is over the age of 40 and is disabled as defined by the

Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"). She also alleges that she is a member of a protected class based on race, although her complaint does not specify her race. (Complaint, doc. 1, para. 71).[1] She was first employed by the City as an accountant in 2007, and was supervised at times relevant to this action by Colon, the director of the City's Department of Community Development. The City terminated Dixon's employment on June 30, 2015, asserting in subsequent appeals that she was absent without leave in violation of Jefferson County Personnel Rule 13.6.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2015, and timely filed this action after receiving a right-to-sue letter dated July 12, 2016. Her complaint alleges that she was subjected to discrimination by the City on account of her race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and 42 U.S.C. §1983. (Counts I and VI). She further asserts that she was discriminated against on account of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA")[2] (Count II), and on account

---

[1] The complaint sets forth two comparators, who are described as "white applicants." The court assumes from this that the plaintiff is of a race other than Caucasian.

[2] The Complaint does not set forth the statutory basis for this age discrimination claim, but the court reads it as arising under the ADEA. The absence of a statutory reference is part of the

of disability, in violation of the ADA (Count III).[3]  She further alleges that she was retaliated against after she objected to and reported acts of age, race, and disability discrimination.   (Count V).[4]  This is not her first lawsuit alleging discrimination against the City.   What follows is a brief synopsis of her employment history with the defendant.

The City hired Dixon in October of 2007, and she worked as an accountant in the City's Department of Community Development until January 2009, when she left work to undergo knee surgeries.   She did not return to her position until

---

basis of the defendant's motion for a more definite statement and, in opposition to that motion, the plaintiff has stated that the claim arises under the ADEA.   It does not appear that she is asserting any state-law claim based on age discrimination.

[3]     Count IV of her complaint also is labeled "Disability Discrimination," and does not refer to any statutory ground, but clearly alleges that she was discriminated against on the basis of her *age*.   It appears that Count III was intended as a disability discrimination claim arising from a failure to accommodate, but is it not clear whether Count IV was intended as some other type of disability-discrimination claim or as an age-discrimination claim.   (Doc. 1, p. 12).   The motion for a more definite statement (doc. 7) is due to be GRANTED to the extent that Count IV is ambiguous, and the plaintiff may file an amended complaint that sets forth the factual and legal basis of Count IV.

[4]     Defendants seek dismissal of the retaliation claim on the basis that her termination arises from an on-the-job injury and thus is a state-law claim arising under Alabama's worker's compensation laws.   The plaintiff has conceded that she makes no claim under the state worker's compensation laws, and the complaint adequately alleges that her termination was motivated by plaintiff's "objecting to and reporting acts of discrimination based on her disability, race, and age."   (Complaint, para. 86).   Accordingly, the motion to dismiss the retaliation claim as one that should be brought in state court (doc. 12, p. 27) is due to be denied.

October 2011.[5]   Less than a year later, in July of 2012, she filed her first EEOC charge against the City, alleging that she was denied promotions in 2010 and training opportunities in 2012 because of her age and disability.   In February of 2013, Dixon filed a complaint against the City in this court, alleging age and disability discrimination, and asserting tort and contract claims arising under Alabama law.   See Dixon v. City of Birmingham, Case No. 2:13-cv-404-WMA.[6] She withdrew her age claims and state-law tort claims, but maintained claims for disability discrimination and retaliation, along with a claim that the City had breached a settlement agreement.[7]   Those claims were dismissed on the defendant's motion for summary judgment when Senior United States District

---

[5]      It is not clear from the record whether this 33-month absence from work because of knee replacement surgery was allowed because of worker's compensation, unpaid leave, paid leave, leave pursuant to the Family Medical Leave Act, or some combination of these, but it is clear that after working for the City for about 15 months, and then after an absence from the workplace of about 33 months, Dixon returned to her position as an accountant with the City.

[6]      Pursuant to Federal Rule of Evidence 201(b) and (d), the court takes judicial notice of all materials within the court's filing system.   The court takes judicial notice that the rulings exist, but not that all matters asserted therein are true.   United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994) and cases cited therein.   In this case, the content of the rulings also is considered not for the truth of the matter asserted therein, but for determining whether the matters have been adjudicated for purposes of defendants' assertion of the doctrine of collateral estoppel.

[7]      The Report and Recommendation in the first federal lawsuit indicates that at some point during that time, Dixon reached a settlement with the City in a "prior matter," the subject of which is not further explained.   Also at some time prior to her first EEOC charge, Dixon apparently filed a worker's compensation claim against the City, but it is not clear if that arose from the need for the knee surgeries.   (Doc. 12-3, p. 7).

Judge William M. Acker accepted and adopted the recommendation of United States Magistrate Judge John H. England, III. (Docs. 35, 37, and 38 in Case No. 2:13-cv-404-WMA). Final judgment was entered on January 27, 2015, and there is no indication in the court record of any appeal.

In the 2013 action, Dixon asserted that she was disabled by lupus, carpal tunnel syndrome, and knee surgeries, which impaired her ability to type on a normal keyboard, to lift more than two pounds, and to walk and bend. The Magistrate Judge recommended summary adjudication in favor of the defendants. More specifically, he recommended dismissal of (1) her claim regarding discriminatory assignment of job duties as without a factual basis and time-barred; (2) her promotion claims as unsupported by substantial evidence and time-barred; (3) her claim regarding training as being without merit because she failed to provide evidence that she was a "qualified individual," and (4) her retaliation claim for failure to present sufficient evidence to establish a *prima facie* case.[8] The District Judge accepted and adopted the recommendations, dismissing all federal claims with prejudice, and dismissing the state-law contract claim without prejudice. The district judge further added that Dixon's ADA retaliation claim

---

[8] The Magistrate Judge also recommended that the federal court decline to exercise supplemental jurisdiction over the sole remaining state-law claim for breach of contract.

was barred for an additional reason, citing University of Texas Southwestern Medical Center v. Nassar, 133 S. Ct. 2517 (2013), for the proposition that retaliation must be a "but-for" cause of the defendant's actions. (Doc. 37 in 2:13-cv-404-WMA).

During the litigation, and even after the court granted summary judgment in favor of the City on January 27, 2015, Dixon continued to work as an accountant for the City. In February 2015, she requested that she be considered for two positions that were open for senior accountants. On March 9, 2015, before those positions were filled, she fell while at work. Later in March 2015, while plaintiff was off work following her fall, the City hired Timothy Smith, a white, younger, less experienced male, as a Principal Accountant. In April 2015, the city promoted Stephanie George, a white, younger, less experienced female, to Senior Accountant. After the fall on March 9, 2015, Dixon did not return to work, and she did not request any type of leave. On June 30, 2015, a determination hearing was held by the City and Dixon's employment was terminated. Dixon was released by her doctor to go back to work on July 1, 2015.[9]

---

[9] Dixon maintains that she was under doctor's instructions to remain off work until July 1, 2015, although the defendant contends that Dixon was absent without leave after the March 9, 2015, accident. Records from the state-court proceeding indicate that the City repeatedly informed Dixon, through her attorney, that she was required to come to work, and that she had failed to provide sufficient medical excuses for the entire absence.

Dixon litigated this issue of her termination by filing an appeal with the Jefferson County Personnel Board. (Doc. 12-4). She received a hearing, was allowed to call witnesses and to introduce evidence, and was represented by counsel. The hearing officer determined that her termination for being absent without leave comported with the Personnel Board rules. The hearing officer's recommendation was affirmed by the Personnel Board, and she appealed that decision to the Jefferson County Circuit Court, where the panel of three circuit judges reviewed the "entire record," and heard the arguments of counsel. The state court affirmed the Personnel Board's termination of Dixon. (Doc. 12-5).

In this case, the defendants seek dismissal of all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, summary adjudication pursuant to Rule 56. The motion filed by the defendants relies upon the pleadings in this action, court rulings from the 2013 case in this court, and her appeal to the Personnel Board that went on to a panel of three judges from the Jefferson County Circuit Court. (Docs. 12-1 through 12-5). The plaintiff has moved to stay the motion for summary judgment, or to strike the exhibits relied upon by the defendants.[10] The court takes judicial notice of the court orders, and need

---

[10] Plaintiff has not asserted that the orders attached to the motion are not what they purport to be. This court is able to view the actual court documents, and has determined that the documents are true and correct copies of the federal court records. The court has not reviewed the Jefferson

not convert the motion to dismiss to a motion for summary judgment because consideration of these orders does not constitute reliance upon matters outside of the pleadings.  See, *e.g.*, Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1276-77 (11th Cir. 1999).[11]  It is also not clear what additional discovery on this narrow question could accomplish.  Given that the evidence being considered is court orders and

---

County Circuit Court records to ascertain that doc. 12-5 is a true and accurate copy, although plaintiff has not disputed the fact of the court's disposition of her appeal from the Personnel Board. The court notes that the plaintiff had notice of the use of these documents, as they were attached to the motion to dismiss.  She has moved to strike them and, indeed, has offered documents from the prior litigation in her opposition to the motion.  "Plaintiff[] had ample notice and opportunity to challenge the propriety of considering the [court-filed] documents at this stage of the litigation." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279 (11th Cir. 1999).

[11]     The rule that judicially-noticed documents can be considered in connection with a Rule 12(b)(6) motion is especially appropriate where, as here, the defendant asserts that plaintiff's claims are barred by the doctrine of collateral estoppel.  As one court has explained:

> In considering such a challenge [based on collateral estoppel], the Court may take judicial notice of and consider documents which are public records, that are attached to the motion to dismiss, without converting the motion to dismiss into a motion for summary judgment.  This is based on the fact that such documents are "public records that [are] 'not subject to reasonable dispute' because they [are] 'capable of accurate and ready determination by resort to sources whose accuracy [can] not reasonably be questioned.'"  Horne v. Potter, 392 Fed. Appx. 800, 802 (11th Cir. 2010) (quoting Fed.R.Evid. 201(b)).  Moreover, "a court may take notice of another court's order... for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of that litigation." United States v. Jones, 29 F.3d 1549, 1553 (11th Cir. 1994).

Haddad v. Dudek, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011).  Courts may take judicial notice of state-court orders and documents, as well.  Lozman v. City of Riviera Beach, 713 F.3d 1066, 1075 n. 9 (11th Cir. 2013); U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 812 (11th Cir. 2015).  The purpose of the doctrine of collateral estoppel is to prevent the relitigation of matters already decided, with all of the accompanying expense, time, and use of judicial resources caused by relitigation.  Therefore, to force the parties to litigate whether a matter has been litigated once already would be especially nonsensical.

judgments from prior litigation, it is not clear what light additional discovery may shed. It is the existence of these orders and judgments that is important, not the facts underlying them. Plaintiff has not disputed that the court orders and judgments exist and were the product of prior litigation. Accordingly, the plaintiff's motion to strike the exhibits or to stay the motion for summary judgment pending the completion of discovery (doc. 18) is DENIED.

## STANDARD OF REVIEW

Because the instant motion to dismiss is premised upon the pleadings in this case and public court records, the motion is evaluated under Federal Rule of Civil Procedure 12(b)(6), because the defendants have asserted that the plaintiff fails to state a claim upon which relief may be granted. On a motion to dismiss, the court must accept as true all of the well-pleaded facts alleged in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-51, 173 L. Ed. 2d 868 (2009). Federal Rule of Civil Procedure 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Liberal notice pleading standards embodied in Rule 8(a) "do not require that a plaintiff specifically plead every element of a cause of action," Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001), or set out in precise

detail the specific facts upon which she bases her claim. The complaint must only

"contain either direct or inferential allegations respecting all the material elements

necessary to sustain a recovery under some viable legal theory." Id. (quoting In

re Plywood Antitrust Litigation, 655 F.2d 627, 641 (5th Cir. Unit A, Sept. 8,

1981)). The Supreme Court raised the threshold for a sufficient pleading in Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1965 (2007)

(rejecting the standard from Conley v. Gibson, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed.

2d 80 (1957), that any "conceivable" set of facts supporting relief is sufficient to

withstand a motion to dismiss). The threshold of plausibility is met where the

plaintiff "pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Ashcroft v.

Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).


## DISCUSSION

The defendants seek dismissal of all of the plaintiff's claims, asserting more

than a dozen grounds for dismissal. Rather than addressing each ground as

separately set out, the grounds for the motion can be addressed in groups. First,

the motion seeks dismissal of all claims against John Colon, on the basis that he is

not an "employer" amenable to suit under the ADEA, the ADA, or Title VII.

Second, the motion seeks to interpose the doctrine of collateral estoppel as to (1) any claim that requires plaintiff to demonstrate that she was a "qualified individual" for the jobs described in the complaint because that issue was decided in the 2013 action, and (2) the determination that her employment dismissal was violative of federal law because the state court determined that it was based on a legitimate cause. Third, the defendants seek dismissal of plaintiff's age- and disability-related claims because she alleges multiple motives for the employment actions about which she complains, which, they contend, is logically inconsistent with the "but-for" standard required for ADEA and ADA claims. Fourth, the defendant argues that the plaintiff cannot assert claims arising under Section 1983 while also asserting Title VII, ADEA, and ADA claims. Fifth and finally, the defendants assert that punitive damages and damages for pain and suffering are not available under the federal statutes giving rise to the claims.[12]

---

[12] The defendants also assert that the retaliation claim should be heard in state court because it arises from an on-the-job injury under Alabama workers' compensation statute. The motion to dismiss is due to be denied on this ground because it simply mischaracterizes the complaint, which clearly alleges that she was retaliated against for "objecting to and reporting acts of discrimination based on her disability, race, and age." (Doc. 1, para. 86). The complaint does not allege retaliation based on her assertion of a state workers' compensation claim.

### 1. Claims against John Colon

The plaintiff asserts that John Colon, in both his individual and official capacities, is liable for the discrimination alleged in the complaint. The defendants counter that Colon is not a proper defendant under the ADA, ADEA, or Title VII, because, in his individual capacity, he is not the "employer," and, in his official capacity, a suit against him is merely duplicative of the suit against the City. In response to the motion to dismiss the claims against Colon, the plaintiff asserts that he may be personally liable "where failure to act or supervise amounts to gross negligence or deliberate indifference." (Doc. 19, p. 7). Plaintiff further asserts that an individual defendant may be liable for retaliatory actions under Title II of the ADA, 42 U.S.C. §12132.

Turning first to claims against Colon in his official capacity, the clear language of <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985), provides that official capacity lawsuits are "only another way of pleading an action against the entity" for whom the official acts. In this case, the City of Birmingham already is a named defendant, and the claims against Colon in his official capacity are duplicative of the claims against the City. Any relief plaintiff seeks against Colon in his official capacity may be obtained through her

claims against the City; accordingly, the motion to dismiss claims against Colon in his official capacity is due to be granted.

With respect to Colon's personal liability, plaintiff asserts there are circumstances under which Colon may be personally liable to her, under both her § 1983 claim (Count VI) and her ADA retaliation claim (Count V). (See Plaintiff's Response to Defendants' Motion, Doc. 19, pp. 6-7).[13] Citing the Eleventh Circuit Court of Appeals case of Bledsoe v. Palm Beach County Soil & Water Conservation Dist., 133 F.3d 816 (11th Cir. 1998), plaintiff contends that the court of appeals has recognized that public employment is covered by Title II of the ADA, which prohibits disability discrimination in relation to "participation in or… [denial of] the benefits of the services, programs, or activities of a public entity…." Although Bledsoe has been rejected by every other circuit court of appeals to address the issue, see Reyazuddin v. Montgomery County, Maryland, 789 F.3d 407, 420 (4th Cir.

---

[13] Although not entirely clear, it appears that plaintiff also has attempted to allege in the complaint personal, individual liability on Colon's part under her race discrimination (Count I) and age discrimination (Count II) claims. Count III of the complaint refers only to the City's failure to accommodate the plaintiff's disability, and states no claim against Colon. In her opposition to the defendants' motion to dismiss, however, plaintiff argues only that Colon may be personally liable for ADA retaliation (Count V) and § 1983 violation of her statutory and constitutional rights (Count VI). It appears, therefore, that she has conceded that Colon is not personally liable directly under Title VII or the ADEA, as alleged in her Counts I and II, respectively. Also, for the reasons discussed below in text, Colon cannot be personally liable under Count IV, regardless of whether it attempts to plead age discrimination or disability discrimination. While plaintiff will be given leave to replead Count IV as to the City, the court will dismiss Count IV insofar as it attempts to plead a claim against Colon personally. Colon's motion to dismiss Counts I, II, and IV against him will be GRANTED.

2015), and cases cited therein, it remains the law in this circuit. Thus, public employment is a "public service" which cannot be denied on the basis of disability. The question presented by this case, however, is whether the plaintiff's supervisor (Colon) can be *personally* liable under the ADA for employment decisions affecting the plaintiff's public employment.

The ADA consists of four parts: Subchapter I prohibits disability discrimination in employment by "covered entities," 42 U.S.C § 12112; Subchapter II prohibits the denial of "public services" on the basis of disability, 42 U.S.C. § 12132; Subchapter III prohibits disability discrimination in "public accommodations," 42 U.S.C. § 12182; and Subchapter IV, among other provisions, prohibits retaliation against "any individual" who has "opposed any act or practice made unlawful by this chapter...." For purposes of Subchapter I, "[t]he term 'covered entity' means 'an employer, employment agency, labor organization, or joint labor-management committee.'" See 42 U.S.C. § 12111(2); Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007). Thus, supervisors who are not "employers" can have no individual liability for employment discrimination under Subchapter I. See Albra v. Advan, Inc., 490 F.3d 826, 830 (11th Cir. 2007) ("individual defendants are not amenable to private suit for violating the anti-discrimination provision of Subchapter I of the ADA."). Colon, therefore, is

not amenable to suit against him personally for any employment related decisions or failures to accommodate the plaintiff's disability.

He also cannot be personally liable for disability-related employment decisions or failures-to-accommodate involving public employment under Subchapter II. Under Bledsoe, a public employer may be liable under Subchapter II for the disability-based denial of "the benefits of the services, programs, or activities of a public entity," including public employment, or when a public employee is "subjected to [disability-based] discrimination by any such entity." 42 U.S.C. § 12132; Todd v. Carstarphen, 2017 WL 655756, at *10 (N.D. Ga. Feb. 17, 2017). But this statutory language clearly limits the scope of the remedy to the "public entity"; it does not extend potential liability to the plaintiff's supervisors or co-employees working for the public entity. Title II does not provide for individual liability where the nature of the claim is that the public employee has been denied a public benefit (such as public employment) on the basis of a disability or has denied an accommodation for a disability.

By contrast, however, the Eleventh Circuit has recognized that the very different statutory language found at § 12203 works a different result for claims of ADA retaliation. In Shotz v. City of Plantation, Fla., 344 F.3d 1161 (11th Cir.

2003), the court appeals noted that ADA retaliation claims are founded on § 12203,

found in Subchapter IV of the Act, which states:

> No *person* shall discriminate against any individual because such
> individual has opposed any act or practice made unlawful by this
> chapter or because such individual made a charge, testified, assisted, or
> participated in any manner in an investigation, proceeding, or hearing
> under this chapter.

42 U.S.C. § 12203 (emphasis added). Unlike the other provisions of the ADA,

which refer to "public entit[ies]" and "covered entit[ies]," the retaliation section

expressly prohibits any other "person" from subjecting someone to retaliation for

opposing any act or practice proscribed by the statute. The court of appeals

conducted that, for retaliation actions, "an individual may be sued privately in his or

her personal capacity for violating § 12203 in the public services context." Shotz v.

City of Plantation, Fla., 344 F.3d 1161, 1179–80 (11th Cir. 2003). Thus, under

Shotz, the plaintiff may allege facts showing that her supervisor retaliated against

her for opposing disability discrimination in public employment. In this case,

plaintiff alleges that her supervisor, Colon, retaliated against her for having filed an

earlier EEOC complaint and a federal lawsuit alleging disability discrimination in

her employment, and that he did so by denying her a promotion she sought and by

terminating her employment. Count V of the complaint adequately alleges a

plausible claim of § 12203 retaliation by Colon, so that his motion to dismiss that count is due to be denied.[14]

In Count VI of her complaint, the plaintiff alleges pursuant to 42 U.S.C. § 1983, that both the City and Colon[15] "discriminated against the plaintiff in the terms, conditions, and privileges of employment when it failed to promote Dixon, the most qualified employee with the most seniority for the two positions of Sr. Accountant or the position of Principal Accountant, and placed two younger, less qualified, non-disabled employees in those positions."   (Complaint, Doc. 1, ¶ 91). As explained in more detail below, the plaintiff may not use § 1983 as an alternative to or to supplement her employment discrimination claims under the ADEA (age) and the ADA (disability).   Thus, insofar as Count VI alleges a § 1983 claim against Colon, it too is due to be DISMISSED on the defendants' motion.

Accordingly, the court finds that the claims alleging employment discrimination under the ADA, the ADEA, and Title VII against Colon in both his

---

[14]    Even though the court finds unpersuasive the argument that Colon cannot be sued personally for ADA retaliation, that portion of Count V alleging a retaliatory termination ultimately will be dismissed because the plaintiff is collaterally estopped from relitigating the reason for her termination.   The remaining portion of Count V, in which plaintiff alleges that Colon retaliated against her by denying her promotions, is not collaterally estopped and remains viable.

[15]    Count VI expressly alleges that "the Defendants" discriminated against the plaintiff.   The court reads the use of the plural as asserting the claim as to both defendants.

official and individual capacities are due to be dismissed. Likewise, the claim in Count VI arising under Section 1983 in his individual capacity also is due to be dismissed. The motion to dismiss is DENIED, however, as to Count V alleging ADA retaliation by Colon.

### 2. Collateral Estoppel

The defendants also assert that Dixon is collaterally estopped from litigating whether she is a "qualified individual" pursuant to the ADA because that issue was determined by the federal court in the 2013 action. The plaintiff counters that, while the 2013 lawsuit involved a similar issue, the precise issue was not litigated, and that any finding by the court in 2015 that she was not "qualified" did not mean that she could not become a "qualified individual" at a later date.

The preclusive effect of a federal court judgment involving an issue of federal law is determined by federal common law, and not state law. Taylor v. Sturgell, 553 U.S. 880, 891,128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). The federal courts recognize the general principles of *res judicata* that prevent a party from relitigating an issue that already has been decided by a competent court. The doctrine encompasses both claim preclusion, usually referred to as *res judicata*, and issue preclusion, also known as collateral estoppel. Community State Bank v. Strong, 651 F.3d 1241, 1263 (11th Cir. 2011). The defendants

assert that collateral estoppel prevents Dixon from relitigating the issue of whether she is a qualified individual for purposes of the ADA. A party invoking collateral estoppel must demonstrate that (1) the issue decided in the prior case is identical to the issue asserted in the new case; (2) the issue was actually litigated in the prior case, (3) determination of the issue was essential to the court's judgment in the prior litigation; and (4) the plaintiff had a full and fair opportunity to litigate the issue. See, e.g., Christo v. Padgett, 223 F.3d 1324, 1339-40 (11th Cir. 2000).

The court is persuaded that these elements are met as to the plaintiff's "qualification" under the ADA until January 27, 2015, but not after that date. Even though the position of senior accountant was dismissed in the prior action as time-barred, it is clear from the report and recommendation in the prior case that the various positions that were filled by accountants—whether given the title of accountant, senior accountant, or principal accountant—all required manual dexterity and a minimal amount of ambulation.[16] Therefore, the identical issue of the qualifications for the accounting positions at issue in this case were actually litigated in the prior case, and the determination of the qualification issue was

---

[16] The court found that the position of accountant, like the positions to which she sought to be promoted – senior accountant, principal accountant, and principal administrative analyst – all had the same physical demands of "walking, bending, lifting, or minimal physical activity" and "[c]omputer work requir[ing] manual dexterity." (Doc. 12-3 at p. 5).

essential to the final judgment. The parties indisputably had a full and fair opportunity to litigate the issue. Accordingly, all four elements of collateral estoppel have been met.

The court finds unpersuasive the defendants' argument that the doctrine of collateral estoppel applies after January 27, 2015, most notably for the common sense reason that the defendant City kept the plaintiff working in the position of accountant *after* the court deemed her to be unqualified. Even though the court determined that she was unable to perform the manual dexterity work and to do the minimal amount of walking, bending, and lifting that was necessary even for the sedentary work of accounting, she continued to perform those very functions for the City. The fact that the City continued to employ Dixon after the January 2015 decision belies its position that the plaintiff was not qualified to work after the judgment was entered in January of 2015. Certainly the City cannot have it both ways, arguing that plaintiff was not a "qualified person" to meet the minimal physical demands of her job, while allowing her to work and prove that she could perform the job. Although the plaintiff's argument is similarly tenuous—contending that, while she may have not have been qualified to do the jobs prior to January 27, 2015, she was qualified after that date, and remained qualified even after she suffered an additional injury and was unable to report to

work for more than three months after March 9, 2015—it is at least possible that she could demonstrate that her condition improved after the January 27, 2015, judgment, and that she became a "qualified individual" under the ADA on that date or at some point prior to her termination.    Moreover, the plaintiff argues that there are reasonable accommodations, most notably "Dragon software," that remove the need for manual dexterity in order for the plaintiff to be able to perform the data entry or "typing" necessary to the accounting positions.    Dixon also argues that leave would have been a reasonable accommodation after the March 9, 2015.

To the limited extent that the plaintiff may be permitted to demonstrate that her ability to work, if given a reasonable accommodation, improved after January 27, 2015, the motion to dismiss her ADA claim on grounds of collateral estoppel is due to be denied.[17]    To the extent that the defendant seeks to bar the plaintiff from arguing that she was a "qualified individual" prior to January 27, 2015, however, the motion is due to be granted.

---

[17]    Defendant also asserts that the plaintiff is estopped from arguing that she was qualified for the job as it relates to her race claim; however, that issue was not actually litigated and raises different questions than the qualification issues under the ADA.    A plaintiff may be deemed qualified for a job under Title VII by demonstrating that she performed the job.    Accordingly, to the extent that the motion seeks to estop plaintiff from asserting that she was qualified for the positions under Title VII, the motion is due to be denied.

The defendants also seek to bar the plaintiff from asserting that she was terminated for a retaliatory reason, arguing that this issue was litigated in the state courts, when Dixon appealed her termination to the Jefferson County Personnel Board and the board's decision was affirmed by the Jefferson County Circuit Court.[18] The plaintiff argues that the issue before the state court was not the same legal issue presented here, because the issue before the state court was "whether being absent while not being on approved leave was AWOL i.e. a violation of a [Personnel Board] rule." (Doc. 19, p. 17).

The application of the doctrine of collateral estoppel to a claim decided by a state court is governed by the applicable state law. Community State Bank, 651 F.3d at 1263. The Eleventh Circuit Court of Appeals has stated that "[w]hen a state agency, acting in a judicial capacity, resolves disputed issues of fact properly before it that the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's court." Travers v. Jones, 323 F.3d 1294, 1296 (11th Cir. 2003) (citing University of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S. Ct. 3220,

---

[18] Count V of the complaint alleges two distinct forms of retaliation: retaliatory termination and retaliatory denial of promotions. See Complaint, Doc. 1, ¶¶ 86-87. The defendants' motion apparently seeks the dismissal only of the retaliatory termination claim. Plaintiff's allegation that she was denied promotions in retaliation for opposing practices made unlawful by Title II of the ADA are not affected by this motion.

92 L. Ed. 2d 635 (1986)).   In Alabama, the elements of collateral estoppel require: (1) identity of the parties; (2) identity of issue to be estopped; (3) an opportunity to litigate the issue; (4) that the issue was actually litigated and determined; and (5) that the determination of the issue was necessary to the decision.   See Petty v. United Plating, Inc., 2012 WL 2047532 at *11-14 (N.D. Ala. May 31, 2012), and cases cited therein.

The preclusive effect of a state court's determination of an administrative board's decision in an employment case was examined in Ross v. Renaissance Montgomery Hotel & Spa, 2012 WL 1032618 (M.D. Ala. March 27, 2012).   In Ross, a hotel employee was fired for failing to perform an assigned task, and he appealed a claim for unemployment benefits to the Alabama Department of Industrial Relations, which found that he had been fired for misconduct.   The agency's determination was appealed to the state circuit court, which affirmed. The employee then filed a claim in federal court asserting age discrimination under the ADEA, arguing that there were other reasons for his firing.   Ross, 2012 WL 1032618 at * 1.   That court discussed whether the decision that he was fired for misconduct precluded his claim under the ADEA:

> Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts
> must give a state court judgment preclusive effect if the state's courts

23

would do the same. As a necessary corollary, federal courts must look to state law to see whether a state court decision will preclude issues or claims brought in federal court. More specifically, and relevant here, "[a] state court's decision upholding an administrative body's findings has preclusive effect in a subsequent federal court proceeding if: (1) the courts of that state would be bound by the decision; and (2) the state proceedings that produced the decision comported with the requirements of due process." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982)).

Under Alabama law, a party has to establish four elements before the resolution of an issue in an earlier proceeding will preclude relitigation in a later one. First, the party claiming the benefit of the earlier judgment would had to have suffered prejudice if a different result obtained in the earlier proceeding. *Christian Television Corp. v. RCH Broadcasting*, *Inc.*, 554 So. 2d 989, 992 (Ala.1989). Second, the party sought to be precluded has to have been a party or in privity with a party to the earlier case. *Id*. Third, the latter suit must involve an issue identical to the one actually litigated and decided in the first action. *Id*. And fourth, the result of the earlier case has to have turned on resolving the identical issue. *Id*.

The Renaissance Hotel can meet the first two elements easily. A different result in the unemployment compensation proceeding would have required the hotel to pay out benefits to Ross, and Ross was, of course, a party to that case. With the first two elements satisfied, the preclusive effect of the state proceedings turns on comparing the dispositive issues in the unemployment compensation case with the issue presented by Ross's ADEA claim. If the issues are the same, the state court judgment upholding the administrative proceeding has preclusive effect; if the issues differ, it does not.

The Supreme Court of Alabama has taken a pragmatic, common sense approach to this inquiry. Under established precedent, an "issue" is a "single, certain and material point arising out of the allegations and contentions of the parties." *Christian Television*, 554 So. 2d at 992

(quoting *Moore's Federal Practice* 760–61 (2d ed. 1978)). Yet
Alabama law does not require the two proceedings to present the
exact same set of facts or have the parties raise the exact same set of
contentions. *Id.* ("A new contention is not... necessarily a new
issue."). By the same token, a litigant cannot split an issue into
pieces in the second action, or decline to raise relevant arguments in
the first, so as to avoid the preclusive effect of an unfavorable
judgment in the first proceeding. *Id.* So to avoid giving litigants a
second bite at the same apple, Alabama law holds that "[a]ny
contention that is necessarily inconsistent with a prior adjudication of
a material and litigated issue... is subsumed in that issue and precluded
by the prior judgment's collateral estoppel effect." *Id.* (quoting
*Moore's Federal Practice* 760–61 (2d ed.1978)).

Ross, 2012 WL 1032618 at *2-3.

In the instant case, as in Ross, the first two requirements are met.
Additionally, the issue is the same because both this case and the case before the
Jefferson County Personnel Board turn upon a determination of the reason for
Dixon's termination. Dixon had counsel present at her hearing and the Personnel
Board hearing officer specifically noted that Dixon had "not shown that [the City]
did not have a legitimate reason for terminating her, or that the punishment
imposed was too severe." The hearing officer further found that Dixon failed to
show that "any other employee engaged in the same misconduct but was treated
more favorably." (Doc. 12-4, p. 18). It is clear from the hearing officer's
recommendation that Dixon had a full and fair opportunity to assert that she was

fired for some reason other than her failure to comply with the rule regarding leave, and that she did not present evidence that there was another reason for the City's personnel action. Accordingly, the reason for Dixon's termination has been litigated in the state court, and the reason was found to be a legitimate, non-retaliatory reason. This, of course, does not dispose of her Count V allegation that she was also denied promotions in retaliation for having opposed disability discrimination. The state court action litigated only the reasons for her termination, and it did not address the reasons she was not promoted. Therefore, plaintiff's retaliation claim alleging a retaliatory termination is barred by the doctrine of collateral estoppel under Alabama law, but not her claims of retaliatory denial of promotions, which remain pending. The defendants' motion to dismiss her retaliation claim in Count V is due to be granted in part (as to retaliatory termination claim) and denied in part (as to retaliatory denial of promotions), as discussed above.

### 3. Multiple Motives

The defendants, citing Gross v. FBL Financial Services, Inc., 557 U.S. 167, 129 S. Ct. 2343, 2351, 174 L. Ed. 2d 119 (2009), argue that the plaintiff cannot prevail on age, race, and disability discrimination claims simultaneously. They assert that the "but-for" standard of proof required for age discrimination and

disability discrimination claims makes it logically inconsistent to assert that multiple motives were involved in employment decisions. The Eleventh Circuit Court of Appeals recently made clear, however, that the pleading of alternative and inconsistent claims is permitted. <u>Karen Savage v. Secure First Credit Union</u>, 2016 WL 2997171 (May 25, 2016); citing <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1273 (11th Cir. 2009). The court is persuaded by precedent that the "but for" element in ADEA actions does not prohibit a plaintiff from pleading *alternative* theories of liability. At the pleading stage of a case, Rule 8(d)(3) of the Federal Rules of Civil Procedure plainly provides that a "party may state as many separate claims or defenses as it has, *regardless of consistency*." (Emphasis added). Thus, simply because an ADEA claim and a race-, disability- or age-based discrimination claim ultimately may be inconsistent with one another because of the "but for" requirement of an ADEA claim, this does not mean that a plaintiff must choose between them at the pleading stage of the case. The plaintiff may plead them alternatively and then determine through discovery which is better supported by the evidence and consistent with the true motivation for the employment decisions taken against her. At this stage, therefore, the defendants are not entitled to dismissal of any of the claims based on the "but-for" requirement of the ADEA. Accordingly, the motion to dismiss on this premise is due to be denied.

### 4. Section 1983

The defendants assert that plaintiff's Section 1983 claims alleging age and disability discrimination are due to be dismissed because such claims are foreclosed by her ADA and ADEA claims, based upon the Supreme Court's holding in Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n, 453 U.S. 1, 20 (1980) (holding that when remedial schemes provided by federal statutes are "sufficiently comprehensive," they demonstrate congressional intent to preclude remedy pursuant to Section 1983). The plaintiff's brief in opposition to the motion does not address this argument.

The Eleventh Circuit Court of Appeals has determined that the remedial framework of the ADA is sufficiently comprehensive to foreclose an action under Section 1983 based solely on rights created by the ADA. Holbrook v. City of Alpharetta, Ga., 112 F.3d 1522, 1531 (11th Cir. 1997). A claim under § 1983 cannot be pleaded as an alternative to a claim under the ADA. The appellate court has not, however, extended this rationale to claims raised under the ADEA, even though other circuits have imposed that limitation. See McNa v. Communications Inter-Local Agency, 551 F. Supp. 2d 1343, 1348-49 (M.D. Fla. 2008) (citing and following cases from Fifth and Fourth Circuits extending that rationale to the ADEA); but see Williams v. Alabama Dept. of Corrections, 2014 WL 636977 (N.D. Ala. 2014) (stating that the Eleventh Circuit Court of Appeals

should be left to decide whether to apply the bar to claims arising under the Equal

Protection Clause).[19]  As many of these cases have observed:

> [S]even circuits (First, Third, Fourth, Fifth, Ninth, Tenth, and D.C.)…
> have held "that the ADEA provides the exclusive judicial remedy for
> claims of age discrimination." <u>Zombro</u>, 868 F.2d at 1369.
> Furthermore, absent a decision on this issue from the Eleventh Circuit,
> the Fifth Circuit's opinion in <u>Paterson v. Weinberger</u>, 644 F.2d 521,
> 524 (5th Cir. 1981), holding that the ADEA is the exclusive remedy
> for age discrimination in federal employment, carries great weight.
> [Plaintiff] cannot "circumvent the ADEA by suing under § 1983."
> Collins, 2012 WL 7802745, at *25.

<u>Committe v. Bd. of Trustees of the Florida State Univ.</u>, 016 WL 4942044, at *4

(N.D. Fla. Aug. 26, 2016), report and recommendation adopted sub nom. <u>Bruce</u>

<u>Committe v. Bd. of Trustees of the Florida State Univ.</u>, 2016 WL 4942015 (N.D.

Fla. Sept. 15, 2016), appeal dismissed sub nom. <u>Bruce Committe v. Board of</u>

<u>Trustees of the Florida State Univ., et al.</u>, (11th Cir. Nov. 17, 2016).   This court

agrees that because the ADEA has a comprehensive remedial scheme, § 1983

---

[19]  It is not at all clear that plaintiff has attempted to plead a race-based claim under § 1983.
Count VI of the plaintiff's complaint specifically alleges only that "younger, less qualified,
non-disabled employees" were given the promotions sought by Ms. Dixon and that she was
terminated "while she was out on doctor's orders."   There is no apparent allegation that the
promotions were racially motivated.   The allegations focus entirely on age and disability
animus.   Consequently, the court need not address the allegations of Title VII race-based
discrimination in conjunction with Section 1983.   Defendants do not assert that the Title VII
race claims cannot be raised along with a 1983 claims, and case law dictates that the two can and
should coexist. <u>See, e.g.</u> <u>Busby v. City of Orlando</u>, 931 F.2d 764, 777 (11th Cir. 1991).

cannot be used to supplement an age-discrimination claim asserted under the ADEA. Accordingly, the motion to dismiss any claims under Section 1983 that assert discrimination or retaliation based on age or disability is due to be granted.

### 5. Punitive Damages

The Defendants rely upon <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S.247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981), for their contention that the City is not liable for any punitive damages. The plaintiff concedes, arguing only that Colon, in his individual capacity, may be liable for punitive damages under Section 1983. (Doc. 19, p. 19). Defendants have not sought to dismiss any claims for damages against Colon. The motion also, however, seeks to dismiss the claims for damages for pain and suffering against the municipality, citing <u>Goldstein v. Manhattan Industries, Ind.</u>, 758 F.2d 1435, 1446 (11th Cir. 1985). Plaintiff argues that the defendant cites no authority for the dismissal of claims for damages for pain and suffering arising from Title VII, the ADA, or Section 1983. The case cited does address only claims arising under the ADEA, and plaintiff does not appear to dispute that pain and suffering is not a recoverable damage under the ADEA. Accordingly, the motion is due to be granted as to any punitive damage claims against the City, and as to damages for pain and suffering that arise from plaintiff's ADEA claim.

## CONCLUSION

Based upon the foregoing, the motion to dismiss filed by the defendants (doc. 11) is due to be granted in part and denied in part. The motion is due to be GRANTED, as follows:

1. All claims against John Colon, in both his individual and official capacities, filed pursuant to the ADEA and Title VII, and all claims of employment discrimination under the ADA, with the exception of the plaintiff's ADA retaliation claim based on post-January 2015 failure to promote the plaintiff, are due to be dismissed. To the extent that Count V alleges that Colon failed to promote plaintiff to open positions after January 27, 2015, in retaliation for her earlier complaints of disability discrimination, it remains pending.

2. All claims of disability-related employment discrimination under the ADA based on events occurring prior to January 27, 2015, are precluded by collateral estoppel, and are dismissed.

3. Plaintiff's claim of retaliatory termination of employment is precluded by collateral estoppel, and is dismissed.

4. All claims for punitive damages against the City of Birmingham are dismissed.

5.    All claims under 42 U.S.C. § 1983 for employment-related discrimination based on age or disability are dismissed.    Section 1983 claims for race-based employment discrimination remain pending.

The motion to dismiss otherwise is due to be denied.[20]    In addition, the motion for a more definite statement (doc. 7) is due to be granted to the extent that the plaintiff must more clearly set forth the factual and legal basis of Count IV, and the motion for a more definite statement is otherwise due to be denied.

---

[20]    For sake of clarity, the court attempts to summarize the claims that remain pending as follows:

Count I—Discriminatory failure to promote, based on race, under Title VII, against the City only.

Count II—Discriminatory failure to promote, based on age, under the ADEA, against the City only.

Count III—Discriminatory failure to accommodate the plaintiff's disabilities under Titles I and II of the ADA, against the City only, for events after January 27, 2015.

Count IV—To be repleaded by plaintiff within fourteen (14) days.

Count V—Retaliatory failure to promote, based on disability, under Title IV of the ADA, against the City and Colon; retaliatory failure to promote based on race under Title VII of the Civil Rights Act and based on age under the ADEA, against the City only.

Count VI—Dismissed in its entirety.

If any party believes this summary of the remaining claims is inaccurate or incomplete, that party should file a motion to alter or amend this Order within fourteen (14) days to correctly state the remaining claims.

A separate order will be entered dismissing the claims as described herein.

DATED this 1st day of June, 2017.

_____

T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE